IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SHERRY L. IRVIN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 10-085-DRH-CJP** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to Chief Judge David R. Herndon pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Sherry L. Irvin seeks judicial review of the final agency decision denying her Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.[1]

## Procedural History

Plaintiff filed an application for SSI on June 16, 2004, alleging disability as of May 21, 2004. (Tr. 39). The application was denied initially and on reconsideration. After a hearing, Administrative Law Judge (ALJ) M. Kathleen Gavin denied the application on January 17, 2008.

---

[1]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

(Tr. 39-47). Plaintiff's request for review was denied by the Appeals Council, and the January 17, 2008, decision became the final agency decision. (Tr. 16).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in this court.

## Issues Raised by Plaintiff

Plaintiff filed a subsequent application for SSI on February 5, 2008. That application was granted and plaintiff was found to be disabled as of February 5, 2008. (Tr. 8-15). A prior application was denied on May 20, 2004. (Tr. 29). Thus, at issue here is a closed period from May 21, 2004, to January 17, 2008.

Plaintiff raises the following issues:

(1) The ALJ improperly rejected the opinions of her treating psychiatrist and licensed professional counselor.

(2) The ALJ erred in her determination of plaintiff's credibility and in evaluating her complaints of pain.

(3) The ALJ's Residual Functional Capacity assessment was insufficient because it did not include all limitations established by the medical evidence.

## The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record, focused on the period of time at issue here.

**1. Plaintiff's Testimony**

The evidentiary hearing took place on October 30, 2007. Plaintiff was represented at the

hearing by non-attorney Daren Ford. (Tr. 121).[2]

Plaintiff was born in 1957. She has some college and was licensed as an LPN. (Tr. 875). She was about 5 feet tall and weighted about 200 pounds. She last worked as a nurse in 1989. She stopped working because she began having headaches . She was diagnosed with fibromyalgia, and had "lots of physical and emotional troubles." (Tr. 876-877).

Ms. Irvin testified that she was unable to work at the time of the hearing because she is depressed and has agoraphobia. She has anxiety and a personality disorder. (Tr. 877). She also has arthritis and fibromyalgia. She testified that she has suicidal thoughts. She stated that she is scared to leave the house. (Tr. 880). She also testified that she has panic attacks, which have caused her to go to an emergency room. (Tr. 884).

Ms. Irvin testified that she attends individual and group counseling at the health department (Egyptian Health), and that the health department "sets up" her medicines. (Tr. 877). She sees Dr. Chandra at the health department every three months, and sees an individual counselor, Leslie Merritt, every week. (Tr. 879).

At the time of the hearing, plaintiff was taking Lexapro, BuSpar, Trazodone, Abilify, and blood pressure medication. (Tr. 878).

Plaintiff testified that she had been in a hospital psychiatric ward four times, in 2005 and 2006. (Tr. 879). Her first psychiatric hospitalization was in 1987, after she had been raped. (Tr. 886-887).

With regard to her daily activities, Ms. Irvin testified that she doesn't sleep well at night, and she is tired all the time. She has feelings of worthlessness and low self esteem. She "deal[s]

---

[2]Plaintiff is represented by attorney Barry A. Schultz in this Court.

with the pain of fibromyalgia." She does "a little bit around the house" but stays in bed a lot also. A doctor has recommended exercises for her fibromyalgia, but she was unable to do them. (Tr. 885).

Plaintiff testified that she has no friends. She has her mother take her to the grocery store in another town. She does not want to go the local store because she feels that everyone is looking at her. (Tr. 886). The only family members with which she associates are her mother and father. (Tr. 887). She still drives, but not very often. Counselors from Egyptian Health will take her to appointments or to the store. (Tr. 888).

**2.     Vocational Expert**

Dr. Darrell Taylor testified as a vocational expert. Plaintiff had no objections to his qualifications. (Tr. 873).

Asked to assume a person who could perform medium work but was limited to one-to-two step work and no more than occasional contact with the general public, the VE testified that she could perform jobs such as janitor (50,000 in the state of Illinois), unskilled hand packer (8,000 in the state of Illinois) and unskilled assembler (15,000 in the state of Illinois). Asked to assume a person who could perform light work, with the same limitations plus that she could not work as part of a team, the VE testified that were jobs that exist in significant number which she could do. (Tr. 891).

The ALJ then asked Dr. Taylor to assume the RFC that had been indicated by Dr. Chandra, i.e., difficulty working 8 hours a day, likely to miss 3 days or more a month, her symptoms would interfere with attention and concentration, and severe limitation in ability to deal with ordinary work stressors. The VE testified that such a person would be unable to work.

(Tr. 891-892).

3. **Records of Treatment and Evaluations**

Ms. Irvin received mental health treatment through Egyptian Health Department. She was referred there in July, 2000, after having panic attacks. (Tr. 400). She was seen there by psychiatrist Dr. Rakesh Chandra, M.D., at regular intervals during the period in issue. She was also seen by counselors, most often by Licensed Professional Counselor Leslie Merritt.

Dr. Chandra's notes are brief, and mostly concern the management of plaintiff's various medications. His notes from August 5, 2004 through November 4, 2004, indicate that Ms. Irvin was taking Remeron and Paxil, and was fairly stable. The main diagnosis was Borderline Personality Disorder, with a second diagnosis of Depressive Disorder in remission with medication. (Tr. 411-414).

A consultative physical examination was performed by Vittal Chapa, M.D., on September 27, 2004. Her mental status was noted to be normal, with no delusions or hallucinations, and her contact with reality was good. Her physical examination was essentially normal. Dr. Chapa noted that she had a full range of motion with no evidence of joint redness, heat, swelling or thickening. She had no paravertebral spasm. She had good hand grip and was able to perform fine and gross manipulations. He noted diagnoses of depression, fibromyalgia, irritable bowel syndrome and a history of shortness of breath. (Tr. 487-490).

Also on September 27, 2004, Harry Deppe, Ph.D, performed a consultative psychological examination. He reviewed some of Dr. Chandra's notes in conjunction with his evaluation. Dr. Deppe's diagnoses were polysubstance abuse by history, major depression in partial remission and personality disorder. He concluded that she had fair ability to relate to others, including co-

workers and supervisors; intact ability to understand and follow simple instructions; intact ability to maintain attention to perform simple repetitive tasks; and fair ability to withstand the stress and pressures of day-to-day work activity. (Tr.483- 486).

State agency physicians reviewed the records in October, 2004. B. Rock Oh, M.D., concluded that plaintiff had the physical RFC to perform a full range of medium work. (Tr. 452-459). Donald Henson, Ph.D., performed a Psychiatric Review Technique. He concluded that plaintiff had a depressive disorder and a personality disorder. His assessment was that she had moderate restrictions of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and that there had been one or two episodes of decompensation. He concluded that the "B" and "C" criteria were not satisfied, and that plaintiff's condition therefore does not meet or equal a listed impairment. (Tr. 460-473).

Dr. Henson also completed a Mental RFC Assessment. He opined that she had moderate limitations in her ability to carry out detailed instructions, to perform activities on schedule and maintain regular attendance, to complete a normal workday and workweek without interruptions from psychological symptoms, and in her ability to interact appropriately with the general public. He also found that her ability to maintain attention and concentration, her ability to sustain an ordinary routine, and her ability to make simple work-related decisions were "not significantly limited." (Tr. 474-477).

In October, 2004, Dr. Chandra signed off on a psychiatric report form that had been sent to Egyptian Health by the Bureau of Disability Determination. The form is filled out in handwriting, and it is not clear by whom. The form states that the frequency of visits was

"weekly/beweekly," so the form may actually have been filled out by a counselor, as Dr. Chandra did not see plaintiff that frequently. This form states that Ms. Irvin is delusional and believes that someone is trying to break into her apartment. She watches religious programming on t.v. from the time she gets up in the morning. In individual counseling, she relates everything to "religious ideation." She believes that with one more year of training she will be appointed a bishop. Her contact with reality comes and goes. She cannot deal with the stresses of everyday life. (Tr. 478-482).

The record does not contain any counselor's notes from individual counseling sessions from 2004 or 2006.

On November 4, 2004, Dr. Chandra's office note states that plaintiff was doing well on her medication, and that she was not depressed or suicidal. Her cognitive function, memory, speech, psychomotor activity and concentration were within normal limits. (Tr. 411). A treatment plan prepared on December 6, 2004, at Egyptian Health Department indicated diagnoses of panic disorder with agoraphobia, generalized anxiety disorder and major depression, re-current. (Tr. 415). On December 9, 2004, Dr. Chandra completed a form for the Bureau of Disability Determinations. He stated therein that Ms. Irvin was unkempt with only fair hygiene, and that she was depressed and didn't want anyone around her. She reportedly fought with her neighbors "all the time" and did not talk to her mother or brother. She had a loss of concentration and could not focus. Dr. Chandra stated that she did not "care about time or reality" and that her focus was on eternity. He concluded that she "would have difficulty understanding directions, keeping her focus" and relating to others, and that she could not be consistent or timely. (Tr. 427-430).

The transcript does not contain any records of treatment by Dr. Chandra in 2005.

On several visits in 2006, Dr. Chandra noted that Ms. Irvin was doing well on her medications (Lexapro, Trazodone and Abilify), her insight and judgment were good, and that her depression was in remission with medications. (Tr. 283, 285, 383, 384). In May of 2006, it was noted that she was the care giver for her father, who may have dementia, and that her insight and judgment were good. (Tr. 383).

On July 27, 2006, she complained of stress related to taking care of her father. Her medication was adjusted. (Tr. 285). On that same date, Dr. Chandra completed a form in which he indicated that she was in individual and group counseling, but that she was not responding well. She was having panic attacks. He noted she had extreme limitation in maintaining concentration, persistence and pace, and marked limitation in social functioning. (Tr. 299).

Ms. Irvin was voluntarily admitted to the psychiatric unit at Harrisburg Medical Center on August 20, 2006, after experiencing increasing stress and depression, along with suicidal thoughts. She was discharged on August 22, 2006, at her request, and was directed to continue on her same medications. (Tr. 300-303). Three days later, Counselor Merritt visited Ms. Irvin at her home and reported that she was back on her medications and was doing well. (Tr. 631).

From October, 2006, through July, 2007, plaintiff was treated by Dr. Mujtaba Tapal, for complaints of physical pain. On the first visit, he diagnosed fibromyalgia and noted that she had an overlay of social and psychiatric issues, and that she was "seeking disability." (Tr. 357). On subsequent visits, he noted that she had many or all of the "usual fibromyalgia tender points." Dr. Tapal advised plaintiff to start an aerobic exercise program. (Tr. 342-357).

In January, 2007, Dr. Chandra's note reflected that Ms. Irvin was doing well on her

medication. She had brought her father home from a nursing home, which was causing her some stress, but she was not severely depressed. (Tr. 602). April, 2007, Dr. Chandra adjusted plaintiff's medication because she was clearly paranoid and somewhat delusional and not able to think clearly. (Tr. 600). In July, 2007, she was again doing well and Dr. Chandra noted that her depression was in remission. (Tr. 598).

On October 18, 2007, Dr. Chandra completed a form for the Agency in which he stated that plaintiff had an "extreme" degree of limitation and could not work at all. (Tr. 596-597).

The hearing before the ALJ took place on October 30, 2007. (Tr. 871). Subsequent to the hearing, plaintiff submitted additional records from Egyptian Health Department, which mostly consisted of the notes of Counselor Merritt. Along with those records was a letter from Ms. Merritt, dated November 6, 2007, in which she stated that her notes "quite possible do not express the full extent of Sherry's dysfunctional behaviors." (Tr. 607). The counselor's notes are from July, 2006, through October, 2007. (607-839).

## **Applicable Standards**

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992);** ***Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** ***Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** ***Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

It is important to keep in mind the proper standard of review for this Court. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).** Thus, the Court must determine not whether Ms. Irvin was, in fact, disabled during the relevant time period, but whether ALJ Gavin's findings were supported by substantial evidence; and, of course, whether any errors of law were made. **See,** ***Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing** *Diaz v. Chater*, **55 F.3d 300, 306 (7th Cir.1995)).**

In reviewing for substantial evidence, this Court uses the Supreme Court's definition, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." ***Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971).** Further, the entire administrative record is taken into consideration, but this court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).**

## Analysis

Here, the ALJ properly followed the five step analysis. She concluded that plaintiff does have severe impairments of borderline personality disorder, depression, obesity and fibromyalgia, and that these impairments do not meet or equal a listed impairment. (Tr. 41-43). Ms. Irvin does not challenge the finding that her condition does not meet or equal a listed impairment.

The ALJ found that plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was not entirely credible. (Tr. 44).

In assessing the opinion evidence, the ALJ considered the three reports submitted by Dr. Chandra (dated October 21,2004, December 9, 2004, and October 18, 2007), but declined to give them significant weight. She considered the opinions of the examining doctors and of the state agency reviewers. She discounted Dr. Oh's RFC findings because they did not take into account the combined effect of plaintiff's fibromyalgia and obesity. (Tr. 44). She accepted the findings of Dr. Henson in part, but gave greater weight to Dr. Deppe's findings regarding her ability to withstand stress. (Tr. 44-45).

The ALJ concluded that plaintiff had the RFC to perform light work, limited to simple one to two step work, only occasional contact with the general public, and no work as part of a team. (Tr. 43, 46). There was no issue as to ability to do past relevant work as she had not

worked in the last 15 years and therefore had no past relevant work.  See, 20 C.F.R. §404.1560(b).  The ALJ accepted the testimony of the VE that a person with plaintiff's RFC could perform jobs which exist in significant numbers.

Plaintiff's first point is that ALJ Gavin erred in rejecting the opinions of her treating psychiatrist, Dr. Chandra, and her counselor, Ms. Merritt.  The ALJ declined to give significant weight to Dr. Chandra's three reports because they had been prepared for submission in connection with Ms. Irvin's application for benefits, and they conflicted with Dr. Chandra's treatment notes.  (Tr. 45-46).  The ALJ did not mention Ms. Merritt's notes at all, despite the fact that she stated at the hearing that she wanted those notes and she held the record open for receipt of them.  (Tr. 889, 892).  Plaintiff submitted Ms. Merritt's notes after the hearing, and they were received by the agency on November 13, 2007.  (Tr 606).[3]

A treating physician's opinion is, of course, not automatically entitled to controlling weight.  Such an opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record.  ***Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001).**

It is unclear what weight, if any, the ALJ afforded to Dr. Chandra's opinions.  She simply stated that she did not give them significant weight.  This was error.  If an ALJ determines not to give controlling weight to a treating doctor's opinion, she must then consider the factors set out in 20 C.F.R. §404.1527(d)(2) and determine what weight to give the opinion.  ***Larson v. Astrue*,**

---

[3]In footnote 3 at page 6 of his brief, defendant states that "the record contains evidence that post-dates the ALJ's decision."  This footnote is made in the context of Ms. Merritt's notes, but the reference is unclear.  Ms. Merritt's notes were, in fact, submitted before the ALJ's decision.

**615 F.3d 744, 751 (7th Cir. 2010)**.

The fact that Dr. Chandra's three reports had been prepared for submission to the agency is not a proper basis on which to reject his opinions. The agency sent the forms to Dr. Chandra and requested that he complete them. The ALJ had no such objection to the opinions of Drs. Chapa or Deppe, who examined plaintiff for the purpose of expressing opinions in connection with her application for benefits. In any event, the fact that the reports were prepared for consideration in disability proceedings is not a proper basis on which to reject them. **See, Moss v. Astrue, 555 F.3d 556, 560-561 (7th Cir. 2009).**

This leaves only the ALJ's assertion that Dr. Chandra's opinions were not supported by his treatment records. This is only one of the factors set out in 20 C.F.R. §404.1527(d)(2), and does not, by itself, suffice to reject the doctor's opinions. Further, the ALJ's analysis in this regard was lacking in that she ignored the other records from Egyptian Health Department which tended to support Dr. Chandra's opinions. While the ALJ need not discuss every piece of evidence in the record, it is error to ignore a line of evidence that supports the claimant's position. *Godbey v. Apfel*, **238 F.3d 803, 808 (7th Cir. 2000).**

Ms. Irvin was treated by a team of mental health professionals at Egyptian. Her treatment plans were signed off on by Counselor Merritt and other staff members, as well as by Dr. Chandra. See, Tr. 271, 527. It is proper to consider records reflecting treatment by different providers at the same clinic as a "longitudinal history of complaints and attempts at relief." SSR96-7p. It is evident from the notes that Dr. Chandra's role was management of her medications. He generally saw plaintiff every three months. See, e.g., Tr. 277-286. On the other hand, Ms. Merritt saw plaintiff for individual counseling generally once a week, and she

was also seen by other staff members for group and other therapy during the relevant time period. (Tr. 607-839). Counselor Merritt's records reflect that plaintiff did well at times, and did poorly at other times. Ms. Merritt noted instances of panic attacks and increased depression. (Tr. 623, 630, 661, 800). It was error for the ALJ to completely ignore this evidence. The failure to discuss the voluminous therapy records requires remand.

Plaintiff also takes issue with the ALJ's credibility determination. ALJ Gavin found that Ms. Irvin's "medically determinable impairments would reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 44). The Seventh Circuit criticized this same language in *Parker v. Astrue*, 597 F.3d 920, 921-922 (7th Cir. 2010), stating that "It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony." (emphasis in original).

This Court is not suggesting that every credibility determination expressed in these terms is per se erroneous. Here, however, the credibility determination consists of little more than a review of the medical evidence. That review was incomplete in that it completely ignored Counselor Merritt's treatment notes. In addition, the ALJ incorrectly stated that Ms. Irvin "has not required inpatient treatment for a mental impairment." (Tr. 42). In fact, Ms. Irvin was hospitalized in August, 2006, with complaints of depression and suicidal thoughts. (Tr. 300-303). The ALJ's credibility determination was legally insufficient and based on a misunderstanding of the evidence.

Lastly, plaintiff argues that the determination of her RFC and the hypothetical questions

-14-

posed to the VE were faulty because the ALJ found that she had moderate difficulties with regard to concentration, persistence or pace, but failed to account for those difficulties in her RFC findings. The RFC findings included a limitation to simple one-to-two step work with occasional contact with the general public and no team work, which defendant argues is sufficient to accommodate limitations with regard to concentration, persistence or pace. The fact that the ALJ expressed her finding in the disjunctive makes it all the more difficult to decipher the extent to which she thought Ms. Irvin was limited. The hypothetical questions posed to the VE were based on the limitation to one-to-two step work, and did not include reference to moderate limitations in concentration, persistence or pace. (Tr. 890-891).

Defendant correctly points out that the finding of difficulties with concentration, persistence or pace was made in the context of assessment of the B criteria, which is distinct from the assessment of RFC. That is correct. The B criteria are used to assess the severity of a mental impairment at steps 2 and 3 of the sequential analysis. SSR96-8p. The evaluation of mental RFC "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments." SSR 96-8p. The ALJ's error lies in concluding, as she evidently did, that limiting plaintiff to one-to-two step work adequately accommodates her limitation in concentration, persistence or pace.

The RFC findings and the hypothetical questions were legally insufficient. While there is not a per se requirement that the phrase "concentration, persistence and pace" be used in the hypothetical, a restriction to simple, repetitive tasks is not an adequate substitute because it "will not necessarily exclude from the VE's consideration those positions that present significant

problems of concentration, persistence and pace." ***O'Connor-Spinner v. Astrue* 627 F.3d 614, 620 (7th Cir. 2010).** This is so because "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." ***Ibid.***

This Court agrees with plaintiff that the ALJ erred in the respects discussed above. Plaintiff suggests that the Court should reverse and award her benefits. However, as the record does not conclusively establish that Ms. Irvin was disabled during the relevant time period, the Court cannot order an award of benefits. ***Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356-357 (7th Cir. 2005).** This Court is not making any suggestion as to whether plaintiff is, in fact, disabled, or as to what the ALJ's decision should be on reconsideration.

Remand of a social security case can be ordered pursuant to sentence four or sentence six of 42 U.S.C. § 405(g). A sentence four remand depends upon a finding of error, and is itself a final, appealable order. In contrast, a sentence six remand is for the purpose of receipt of new evidence, but does not determine whether the Commissioner's decision as rendered was correct. A sentence six remand is not an appealable order. **See,** ***Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan*, 195 F.3d 975, 978 (7th Cir. 1999).**

Here, a sentence four remand is appropriate.

### Recommendation

This Court recommends that the Commissioner's final decision be **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

Objections to this Report and Recommendation must be filed on or before **March 22, 2011.**

**Submitted: March 4, 2011.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**